IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| AKOLOUTHEO, LLC, <br><br> Plaintiff, <br><br> v. <br><br> APCON, INC. (d.b.a. APCON SOLUTIONS, INC.), <br><br> Defendant. | CIVIL ACTION NO.: 4:18-cv-100 <br><br> JURY TRIAL DEMANDED |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

1.  Plaintiff Akoloutheo, LLC ("Akoloutheo" or "Plaintiff") files this amended complaint as a matter of right under Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure. This is an action under the patent laws of the United States, Title 35 of the United States Code, for patent infringement in which Akoloutheo makes the following allegations against Apcon, Inc. [d.b.a. Apcon Solutions, Inc.] ("Apcon" or "Defendant").

## PARTIES

2.  Akoloutheo is a Texas limited liability company, having its primary office at 15139 Woodbluff Dr., Frisco, Texas 75035. Plaintiff's owner and sole operator is Rochelle T. Burns.

3.  Defendant is an Oregon corporation having a principal place of business at 9255 SW Pioneer Ct., Wilsonville, Oregon 97070. Defendant also owns and operates a Regional Center located at 4351 Mapleshade Creek, Plano, Texas 75093. Apcon's Registered Agent for service of process in Texas appears to be Scott Kuehns, 2708 Aspen, McKinney, Texas 75070.

## JURISDICTION AND VENUE

4.  This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.  Venue is proper in this district under 28 U.S.C. §§ 1391(c), generally, and under 1400(b), specifically. Plaintiff's principal business location is within this district. Defendant has a

regular and established place of business in this district, and has committed acts of patent infringement in this district.

6. Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to their substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

7. Defendant operates its Regional Center at 4351 Mapleshade Creek in Plano, Texas:



The office building has Apcon's name in signage on the outside of the building, and Apcon occupies and operates from the second floor of the building. Upon information and belief, the building is owned by officers of Apcon, if not Apcon itself.

8. Defendant has infringed by transacting and conducting business within the Eastern District of Texas. Operations from Defendant's Plano location include: Cloud Software testing; Software Development and Engineering; User Experience and Interface design; Web Development and Graphic Design; National and Regional Sales; Product Marketing; and Trade Show participation.

9. Defendant's Regional Center in Plano, Texas is a regular and established place of business in this District, and Defendant has committed acts of infringement at that Regional Center within this District.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 7,426,730

10. Plaintiff is the owner by assignment of the valid and enforceable United States Patent No. 7,426,730 ("the '730 Patent") entitled "Method and System for Generalized and Adaptive Transaction Processing Between Uniform Information Services and Applications" – including all rights to recover for past, present and future acts of infringement. The '730 Patent issued on September 16, 2008, and has a priority date of April 19, 2001. A true and correct copy of the '730 Patent is attached as Exhibit A.

11. Defendant directly – or through intermediaries including distributors, partners, contractors, employees, divisions, branches, subsidiaries, or parents – made, had made, used, operated, imported, provided, supplied, distributed, offered for sale, sold, and/or provided access to software systems, cloud-based software, software as a service (SaaS) and/or mobile applications for network management including, but not limited to, Apcon's WebXR and TitanXR Multi-Switch Management Software ("Apcon Software").

12. Defendant directly – or through intermediaries including distributors, partners, contractors, employees, divisions, branches, subsidiaries, or parents – made, had made, used, operated, imported, provided, supplied, distributed, offered for sale, sold, and/or provided access to network resource providers – devices and systems for network monitoring and management –

including, but not limited to, Apcon's: IntellaFlex XR Blades; IntellaFlex XR Chassis; IntellaFlex Taps; IntellaStore II and II+ Blades; IntellePatch 3288, 3144-XE, 3072-XE, and 3036 Chassis; and EdgeSwitch devices ("Apcon Network Resource(s)").

13. Documentation for Apcon Network Resources indicates that the devices are designed and configured for exclusive compatibility and operation with Apcon Software for monitoring and management:



[4]





14. Documentation for Apcon Software indicates no other uses for the software than for monitoring and management of Apcon Network Resources.



15. Together, Apcon Software and Apcon Network Resources form a unified system, having operations and requirements that are exclusive to Apcon and thereby require use of both, Apcon Software and Apcon Network Resources to fully utilize ("Apcon System").

16. Apcon Software performs centralized monitoring and manipulation functions (*e.g.*, retrieving network performance information, enabling or disabling functionality) on a variety of Apcon Network Resources across a network with which the Apcon Software is operationally and communicatively linked:



17. Apcon Software generates a web browser interface, through which authorized users login to monitor/manipulate various Apcon Network Resources.

18. Apcon Software generates a mobile application interface, through which authorized users may also login to monitor/manipulate various Apcon Network Resources.

19. Apcon Software generates and/or maintains a listing of all devices and resources on the network; and organizes and displays this listing in a map view or a list view:



20. Apcon Software thus generates a registry of Apcon Network Resources and information about each of the Apcon Network Resources:



21. Apcon Software, through its user interface, accepts a transaction requested by a user – such as a request or command applicable to one or more Apcon Network Resource(s).

22. Apcon Software determines which Apcon Network Resources may be responsive to the requested transaction, and dynamically generates a corresponding communication or signal to one or more Apcon Network Resources responsive to that requested transaction.

23. Apcon Software selects which Apcon Network Resource(s) is/are responsive to the requested transaction, and performs the transaction on or with that Apcon Network Resource – such as status requests, alarm configuration, retrieval of operational statistics, and scheduling backups or updates.

24. Apcon Software, through its user interface, accepts user requests or requirements for operational summaries, generates corresponding communications or signals with one or more related Apcon Network Resource(s), and retrieves required data from the Apcon Network Resource(s) – generating a summary or report for a user via the user interface.

25. Apcon Software generates a variety of context specific data in those operational summaries, including – for example – date, time, event type, IP address of network resource, and the name of the Apcon Network Resource's system.

26. Apcon Software, through its user interface, accepts user requests or commands – such as a "Clone" feature – that generate corresponding communications or signals copying the configuration data of a first Apcon Network Resource to one or more other Apcon Network Resource(s).

27. Apcon Software, through its user interface, accepts user requests or commands, generates corresponding communications or signals, to access or configure multiple Apcon Network Resources within the context of a single operation:



.

28. Apcon Software performs monitoring and maintenance of multiple Apcon Network Resources – configurable through its user interface – including batch software upgrades for multiple Apcon Network Resources.

29. Apcon Software generates communications or signals with Apcon Network Resource(s) to identify and enable taps of virtual machine traffic, set traffic filters, follow migration events, and forward network traffic to monitoring systems.

30. Apcon Software creates connections to multiple Apcon Network Resources, displays all Apcon Network Resources, and controls all Apcon Network Resources from a single user interface – and modifies or deletes connections with Apcon Network Resource from that user interface.

31. Apcon Software manages enterprise-scale monitoring infrastructure remotely from a single user interface, and makes Apcon Network Resource changes instantly.

32. Apcon Software is installed on a server networked with a number of Apcon Network Resources – generating its user interface on a user terminal operably associated with that networked server, and performing the functions and operations described in paragraphs 11 – 31, above:



33.     Plaintiff herein restates and incorporates by reference paragraphs 11-32, above.

34.     All recited elements of claims 1-12, 15-27, 29-34, and 37-42 of the '730 Patent are performed on and/or by Apcon Systems – comprising both Apcon Software and Apcon Network Resources.

35.     An Apcon System comprises Apcon Software installed on a networked computer system having a plurality of computer servers and a plurality of Apcon Network Resources communicatively and operationally coupled to the Apcon Software through the plurality of servers – as generally described in paragraphs 13-16, above.

36.     Apcon Software provides information, monitoring or control of one or more Apcon Network Resources according to a transaction request entered into the Apcon System through the Apcon Software user interface – as generally described in paragraphs 16-21, above.

37.     Apcon Software processes resource transactions entered through the Apcon Software user interface – as generally described in paragraphs 16-21, above.

38.     An Apcon System comprises a plurality of Apcon Network Resources, remotely located with respect to the computer system upon which the Apcon Software, and communicatively coupled to the Apcon Software via a computer network – as generally described in paragraphs 13-19, above:



39. Each Apcon Network Resource provides one or more resources available for use by the Apcon Software (*e.g.*, filters, taps, alarms, operational statistics) – as generally described in paragraphs 16, 19, 20, 23, 27, and 29, above.

40. An Apcon System comprises a resource information registry for storing information about the Apcon Network Resources:



41. The information registry in an Apcon System stores resource information available for each of the Apcon Network Resources:



42. Apcon Software, through its user interface, accepts user requests or commands that defines a requested transaction with an Apcon Network Resource; and dynamically generates a corresponding communication or signal to one or more Apcon Network Resource(s) responsive to that requested transaction) – as generally described in paragraphs 16 – 25, above.

43. Apcon Software generates contextual elements for the requested transaction that provide additional information for dynamically selecting and processing with at least one Apcon Network Resource:



44. Apcon Software dynamically selects at least one Apcon Network Resource to process in conjunction with the requested transaction – according to information stored in the resource information registry; as generally described in paragraphs 19 – 23, above.

45. Apcon Software determines one or more operations to perform on the Apcon Network Resource to obtain a result satisfying the requested transaction – such as retrieving status information, or retrieving operational statistics; as generally described in paragraphs 21 – 29, above.

46. Apcon Software obtains the result from the selected Apcon Network Resource and processes that result to generate a desired output to the Apcon Software user interface:



47.     Apcon Systems infringe claims 1-12, 15-27, 29-34, and 37-42 of the '730 Patent.

48.     Apcon Systems literally and directly infringe claims 1-12, 15-27, 29-34, and 37-42 of the '730 Patent.

49.     Apcon Systems perform or comprise all required elements of claims 1-12, 15-27, 29-34, and 37-42 of the '730 Patent.

50.     In the alternative, Apcon Systems infringe claims 1-12, 15-27, 29-34, and 37-42 of the '730 Patent under the doctrine of equivalents. Apcon Systems perform substantially the same functions in substantially the same manner with substantially the same structures, obtaining substantially the same results, as the required elements of claims 1-12, 15-27, 29-34, and 37-42 of the '730 Patent. Any differences between the Apcon Systems and claims 1-12, 15-27, 29-34, and 37-42 of the '730 Patent are insubstantial.

51.     Apcon Systems – by virtue of the exclusivity of use between Apcon Software and Apcon Network Resources – require end users to operate the Apcon Systems in a manner prescribed and controlled by Apcon. Apcon therefore exercises control and/or direction over the performance of every action performed on or by an Apcon System, including those that are initiated by an end user via the Apcon System user interface.

52.     There are no substantially non-infringing uses for the Apcon Systems as described herein.

53.     All recited elements of claims 1-12, 15-27, 29-34, and 37-42 of the '730 Patent are present within, or performed by, Apcon Systems or, in the alternative, performed by end users of Apcon Systems under the direction and control of Apcon – and are therefore attributable to Apcon.

54.     Apcon Systems, when used and/or operated in their intended manner or as designed, infringe claims 1-12, 15-27, 29-34, and 37-42 of the '730 Patent, and Defendant is therefore liable for infringement of the '730 Patent.

**DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

a. A judgment in favor of Plaintiff that Defendant has infringed the '730 Patent;

b. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement of the '730 Patent;

c. A judgment and order requiring Defendant to pay Plaintiff its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the '730 Patent as provided under 35 U.S.C. § 284;

d. An award to Plaintiff for enhanced damages resulting from the knowing and deliberate nature of Defendant's prohibited conduct with notice being made at least as early as the service date of this complaint, as provided under 35 U.S.C. § 284;

e. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees; and

f. Any and all other relief to which Plaintiff may show itself to be entitled.

Dated:  April 10, 2018                                   Respectfully Submitted,

By: /s/ Kenneth Thomas Emanuelson
Kenneth Thomas Emanuelson
Texas Bar No. 24012591
ROSS IP GROUP, PLLC
5050 Quorum Drive, Suite 700
Dallas, Texas 75254
Phone: 972-661-9400
Facsimile: 972-661-9401
ken@emanuelson.us

**ATTORNEY FOR PLAINTIFF AKOLOUTHEO, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, the foregoing was served on all counsel of record who have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d), all others not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing by email, on this the 10th day of April, 2018.

/s/ Kenneth Thomas Emanuelson
Kenneth Thomas Emanuelson